# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SUSAN HOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-94-JHP-SPS** |
| | ) | |
| **CAROLYN COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Susan Howell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born May 22, 1964, and was forty-eight years old at the time of the most recent administrative hearing (Tr. 70). She attended school up to one year of college classes, and has worked as a coin collector, fast food assistant manager, relief operator, material handler, line appliance assembler, molding machine operator, and machine packer (Tr. 32, 283). The claimant alleges that she has been unable to work since December 13, 2006, due to lumbar back problems and surgery (Tr. 277).

## Procedural History

On April 14, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Trace Baldwin held an administrative hearing and determined the claimant was not disabled in a written opinion dated September 8, 2010 (Tr. 110-117), but the Appeals Council reversed the decision of the Commissioner and remanded the case for further proceedings (Tr. 122-124). On remand, ALJ Doug Gabbard, II, conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated August 22, 2012 (Tr. 15-34). The Appeals Council then denied review, so ALJ Gabbard's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry 20 pounds occasionally and ten pounds

frequently, and stand/walk/sit for 6 hours in an 8-hour workday, but with the additional

postural limitations of no climbing ropes/ladders/scaffolds, and only occasionally

climbing ramps or stairs, balancing, crouching, and crawling. He also noted that if she

could perform light work, she could perform sedentary work (Tr. 24). The ALJ therefore

concluded that the claimant could return to her past relevant work as a fast food manager

and a molding maker tenderer (Tr. 32). Alternatively, he found that the claimant was not

disabled because there was other work she could perform in the economy, *e. g.*, cashier II

and sales attendant (Tr. 33).

## Review

The claimant contends that the ALJ erred by: (i) improperly evaluating her

credibility, (ii) failing to properly assess her RFC, (iii) failing to fully develop the record,

and (iv) failing to properly weigh a Medical Source Statement from her treating

physician.[2] The undersigned Magistrate Judge finds these contentions unpersuasive for

the following reasons.

ALJ Gabbard determined that the claimant had the severe impairments of

degenerative disc disease of the lumbar spine status post fusion and status post hardware

removal, as well as nonsevere impairments (for which he found no work-related

limitations) of asthma/chronic obstructive pulmonary disease, migraines, and depressive

disorder (Tr. 21). The specific medical evidence relevant to this appeal reflects that the

---

[2] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

claimant injured her back at work, then underwent a lumbar fusion for her degenerative disc disease at L4-5 and L5-S1, herniated nucleaus pulposus L4-5 and L5-S1, and worsening axial mechanical low back pain with lower extremity radiculopathy, on June 7, 2007 (Tr. 365-371).  She then underwent a hardware removal on July 10, 2008 (Tr. 379). Surgeon Kyle Mangels, M.D., performed the back surgery and subsequent hardware removal, as well as follow-up treatment.  On February 16, 2009, Dr. Mangels noted she had not been approved for physical therapy, and found she had probably neared maximum medical improvement.  He stated that she was "not doing too bad overall," and that he believed she could work "with almost normal restrictions, except no lifting more than 50 pounds" (Tr. 379).  He acknowledged this meant her previous employer might not allow her to return to work with these restrictions, and therefore indicated she might benefit from vocational rehabilitation (Tr. 380).

Dr. Ben Cheek was the claimant's general treating physician, and was the physician who referred her to Dr. Mangels for her back injury.  As such, his treatment notes also contain copies of Dr. Mangels' treatment record.  He completed a mental Medical Source Statement (MSS) of the claimant's ability to do work on May 26, 2009, in which he indicated that the claimant could sit/stand/walk for one hour in an eight-hour workday each, could not do any pushing/pulling, and could not use her feet for repetitive movements such as operating foot controls, nor could she engage in any postural activities such as bending, squatting, crawling, climbing, reaching, stooping, crouching, and kneeling (Tr. 534).  As relevant, he also noted that she could not drive, would need to

take unscheduled breaks, and would likely be absent from work more than four days per month (Tr. 535).

The claimant first contends that the ALJ erred in analyzing her credibility because "nowhere in the decision" did the ALJ provide his reasoning for failing to find the claimant credible. *See* Docket No. 15, p. 11. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 527). Although the use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred

until ability to work is assessed without regard to credibility, even though it often can't be."), this was not the sum total of the ALJ's analysis of the claimant's credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) notes from the claimant's surgeon instructing her to refrain from horseback riding for several months in 2007 (indicating she *had been* engaging in this activity); (ii) treatment notes indicating she had injured herself, *inter alia*, pulling weeds, chopping and hauling wood, and picking up a bale of hay; (iii) treatment notes from 2008 indicating she was riding horses; (iv) and additional reported injuries after lifting a grandchild in 2009 and lifting furniture in 2010 (Tr. 26). Furthermore, the ALJ noted that the claimant's surgeon reported she had a good result after her surgery and was able to return to work with some restrictions, and notes from Dr. Cheek indicated normal gait, grossly normal tone and muscle strength, and full painless range of motion of all major muscle groups and joints in 2009 (Tr. 27). Finally, the ALJ also noted that the claimant had exhibited drug-seeking behavior for pain medications, had gone through her medication too quickly, and had violated her pain medication contract as of January 22, 2010 (Tr. 27). Contrary to the claimant's general assertion that the ALJ did not perform the proper credibility analysis or properly account for her pain, the ALJ clearly linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*, nor did the claimant even point to any evidence suggestive of a different finding. Here, there is no indication that the ALJ misread the claimant's medical

evidence taken as a whole, or that he failed to state his reasoning, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment because the evidence would suggest a more restrictive RFC and the ALJ failed to cite to specific exhibits that he rejected. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. As discussed below, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In the most recent opinion, ALJ Gabbard extensively summarized the claimant's testimony from both administrative hearings, as well as her reports to various treating physicians and counselors (also discussed above in relation to the claimant's credibility) (Tr. 526-528). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*,

365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).  But here, the ALJ's treatment of the medical evidence in this case meets these standards.  The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work.  When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence.

Third, the claimant seems to contend that the ALJ failed to develop the record with regard to her mental impairments, and noted that the ALJ could have recontacted her treating physician.  It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development.  The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations."  *Id.* at 361 [citations omitted].  If the ALJ had doubts as to any of the

evidence, he *could have* re-contacted her treating physicians to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies, because the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Here, the claimant has likewise not met her burden.

Finally, the claimant asserts that the ALJ erred in evaluating treating physician Dr. Cheek's MSS. An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii)

the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5. Here, the ALJ took great pains to assess the evidence from the claimant's treating physicians, including Dr. Cheek and her neurosurgeon Dr. Mangels. Importantly, the ALJ gave Dr. Mangels' opinions great weight, finding that his treatment records established that she did not meet the duration requirement and that by November 17, 2008, he had released her to regular duty work with no lifting, pushing/pulling more than 50 pounds (Tr. 29). The ALJ then turned to Dr. Cheek's opinion and gave it little weight because: (i) it was inconsistent with his own treatment notes which had no limitations noted and had largely normal findings specifically in March 2009 and October 2009; (ii) he indicated limitations of foot controls and driving, but had never told her to stop driving; (iii) Dr. Mangels' treatment notes (as a referring physician) had been made a part of Dr. Cheek's notes, and he should have been aware of her activities that included riding horses (Tr. 29-30). The undersigned Magistrate Judge therefore finds that the ALJ's assessment of *all* the treating physician

opinions in the record met the required standards and that his opinion was sufficiently clear for the Court to determine the weight he gave to Dr. Cheek's opinion (and Dr. Mangels') as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the undersigned Magistrate Judge simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**